UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION at PIKEVILLE**

| | |
|---|---|
| ELLA FAYE BLACKBURN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Case No. |
| v. ) | 7: 16-cv-217-JMH |
| ) | |
| NANCY A. BERRYHILL, ACTING ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY,[1] ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. | |

\*\*\*

This matter is before the Court upon cross motions for summary judgment [DEs 8, 9 and 11][2]. Plaintiff has filed a reply [DE 12]. For the reasons stated below, the Acting Commissioner's motion for summary judgment will be granted.

The Court's review of the Acting Commissioner's decision concerning disability upon reconsideration is limited to an inquiry into whether or not the findings of the Acting Commissioner are supported by substantial evidence, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971). Moreover, this Court's review is limited "to the particular

---
[1] The caption of this matter is amended to reflect that Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin in that role.
[2] The Court notes that plaintiff, contrary to the Court's scheduling order and without leave of Court, filed two separate motions for summary judgment [DE 8 and 9]. The Court will consider only the later of the two.

points that [the claimant] appears to raise in [his] brief on appeal." *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006).

Ella Faye Blackburn filed an application for Disability Insurance Benefits in September 2013, her fourth, alleging disability commencing in January 2008 [TR. 222-234]. After being denied initially and upon reconsideration [TR 103-41], Blackburn requested a hearing [TR 165-66]. Her case was heard [TR 39-51] by Administrative Law Judge (ALJ) Maria Hodges, who issued an unfavorable decision on January 29, 2016 [TR. 22-32]. In her denial decision, the ALJ the ALJ declined to reopen Plaintiff's prior applications and adjudicated the period between May 11, 2012 (the day after the most recent ALJ decision) and December 31, 2012) (Plaintiff's date last insured for DIB purposes)[3] [TR 22]. The ALJ concluded that Plaintiff was not disabled within the meaning of the Act during the relevant period [TR 22-32]. The Appeals Council denied Plaintiff's request for review in July 2016 [TR 1-4]. This appeal followed.

The initial question presented is Plaintiff's contention that the Court should look back to March 2008, even though she has had three prior applications for DIB denied. Plaintiff also

---

[3] In order to receive DIB, a claimant must establish that her disability began before her insured status expired. 20 C.F.R. § 404.131(b).

2

contends that the ALJ de facto reopened her earlier denial decision. Both arguments are flawed.

Plaintiff contends that the ALJ "affirmed the de facto reopening" of her initial 2009 decision. There are two problems with this contention. First, Plaintiff is relying on the 2012 ALJ decision, not the 2015 decision that is under appeal here. In the 2015 decision, the ALJ expressly declined to reopen the 2012 decision [TR 22], so even if Plaintiff's characterization of what the ALJ did in 2012 was accurate, it would still not be under review in this appeal. *See* 20 C.F.R. §§ 404.981 ("[T]he decision of the administrative law judge . . . is binding unless you . . . file an action in Federal district court . . . within 60 days after the date you receive notice of the Appeals Council's action."), §404.987 ("[I]f you are dissatisfied with a determination or decision made in the administrative review process, but do not request further review within the stated period, you lose your right to further review and that . . . decision becomes final."). In any event, in 2012, the ALJ refused to reopen Plaintiff's initial decision and only adjudicated the narrow period—October 2010 to May 2012—that was before her [TR 82-83]. ("[T]he claimant has not submitted any new evidence material to the prior decision and there is therefore no good cause for reopening.")). This did not represent a de facto reopening of the 2009 decision. *See Hamlin*

3

*v. Comm'r of Soc. Sec.*, No. 96-3243, slip op. at 5 (6th Cir. Dec. 17, 1996) (finding no de facto reopening where ALJ expressly stated he was not reopening previous application and stated that he was only considering the unadjudicated period).

In order to reopen any of the prior ALJ decisions, Plaintiff would need to meet one of the narrow exceptions enumerated at 20 C.F.R. § 404.988(c), which describe situations in which a final decision may be reopened "[a]t any time."[4] Plaintiff has made no attempt to explain how she meets any of these reopening situations, and this Court rejects any attempt by Plaintiff to argue she should be found disabled starting in 2008. *See also Califano v. Sanders*, 430 U.S. 99, 107-08 (1977) (finding no jurisdiction to review refusal to reopen absent a constitutional claim). Thus, this Court will not consider the period of time other than that adjudicated by the ALJ on Plaintiff's latest claim: May to December 2012.

---

[4] Within four years of the notice of the initial determination on the application, a final decision may be reopened for "good cause." 20 C.F.R. § 404.988(b). In Plaintiff's most recent application, the initial determination on the application was January 2011—five years before the ALJ decision on the current application [TR 22], so the good cause standard did not apply. In any event, the ALJ specifically held that Plaintiff had not presented new and material evidence to support such a reopening [TR 22]. And Plaintiff has not attempted to argue to this Court that she submitted such new and material evidence or that one of the other bases for "good cause" are present, so as to justify reopening of the 2012 decision. See 20 C.F.R. § 404.989.

4

It is now the opportune place to consider to the evidence germane to the period in question. In the May 2012 decision, the ALJ found that Plaintiff retained the ability to perform a reduced range of light work with the following additional limitations: stand and walk for at least four hours in an eight-hour workday with a break every hour; not engage in sustained or frequent overhead work; not required to use hand held vibrating power tools; not climb hills, slopes, or work on uneven terrain; not crawl, climb ladders, or work at unprotected heights; occasionally bend, stoop, crouch, squat, kneel, and climb stairs, steps, or ramps; not work in the vicinity of heavy moving machinery, be exposed to vibration, operate mobile equipment, engage in commercial driving, be exposed to temperature extremes, or work in damp, humid conditions; should wear corrective eyeglasses; understand, remember, and carry out instructions toward performance of simple repetitive tasks; sustain attention and concentration toward performance of simple repetitive tasks; and could frequently be exposed to supervisors, coworkers, and work pressures [TR 89].

Both before and after that decision, Plaintiff saw her primary care doctor Chad Thacker, M.D., and other providers in his practice frequently (Tr. 1042-44, 1126-28). Before the 2012 decision, Plaintiff frequently reported back pain and described her pain level was seven out of 10 (with 10 being the worst

5

possible pain). (Tr. 1043-44). She reported an exacerbation of that pain in June 2012 (Tr. 1126), but in July 2012, she told endocrinologist Belal Said, M.D., that her pain was only four out of 10 (Tr. 154-57). In September 2012, Plaintiff told Dr. Thacker that her pain had gotten worse over the weekend (Tr. 1127), but that December, Plaintiff did not complain of increased pain and was prescribed her usual medications (Tr. 1128). In 2013 and 2014—after her DIB insured status expired—Dr. Thacker repeatedly noted that Plaintiff's chronic pain was stable (Tr. 1186-88, 1214-15, 1221, 1237).

In January 2014, state agency consultant Mary Thompson, Ph.D., considered Plaintiff's mental functioning after a review of the records and adopted the mental limitations of the May 2012 ALJ decision (Tr. 118). In April 2014, state agency consultant Leah Perritt, Ph.D., affirmed that opinion (Tr. 140). That month, another state agency consultant, P. Saranga, M.D., adopted the physical RFC findings from the May 2012 decision (Tr. 139).

Medical expert Harold Milstein, M.D., answered medical interrogatories sent to him by the ALJ in December 2015 (Tr. 1304-09). He opined that Plaintiff could lift and carry 21 to 50 pounds frequently; sit eight hours total and one hour at a time; stand four hours total and two hours at a time; walk two hours total and one hour at a time; and continuously use her

right hand, operate foot controls, engage in postural activities, and be exposed to environmental conditions (Tr. 1304-09).

At some point before the January 2015 decision, Plaintiff submitted a letter from Dr. Thacker (Tr. 1316). He described Plaintiff's condition and treatment and stated that Plaintiff required multiple medications to maintain a normal lifestyle and complete her activities of daily living (Tr. 1316). He concluded, "The above conditions prevent the patient from being able to commit to any type of gainful employment at all. These conditions along with the patient's age would make any type of employment impossible for the patient" (Tr. 1316).

In her January 2015 decision, the ALJ considered Plaintiff's functioning between May and December 2012 (Tr. 22-32). As relevant here, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease with spinal stenosis, status post right wrist fracture, and depression (Tr. 25). The ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform a reduced range of light work with the same additional limitations as contained in the May 2015 ALJ decision (compare Tr. 27 with Tr. 89). While Plaintiff could not perform her past relevant work with that RFC, the ALJ found that she could perform other work existing in significant numbers in the national economy (Tr. 31). Thus, the

ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. 32).

Plaintiff submitted two additional medical documents to the Appeals Council (Tr. 4). An April 2016 report from Anbu Nadar, M.D., purported to be prepared after an "orthopedic evaluation" (Tr. 1319-21). He stated that Plaintiff was limited in activity that required heavy lifting, frequent bending, twisting, turning, prolonged sitting, and standing (Tr. 1321).

Plaintiff also submitted an April 2016 letter from Dr. Thacker to the Appeals Council (Tr. 1322). He stated that Plaintiff's degenerative disc disease would have "severely limited her ability to lift, carry, stand, stoop, and crawl before December 2012" and that her physical and mental conditions would have prevented her from maintaining any substantial gainful employment prior to December 2012 (Tr. 1322).

To the extent Plaintiff challenges the RFC finding, the Court should reject that argument because this RFC is identical to the RFC from the 2012 ALJ decision (compare Tr. 27 with Tr. 89). In *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842-43 (6th Cir. 1997), the Sixth Circuit held *res judicata* applied to previous ALJ's decisions, and the Commissioner was bound by a previous ALJ's RFC finding absent changed circumstances. In Acquiescence Ruling (AR) 98-4(6), 1998 WL 283902, the agency

clarified how it would comply with *Drummond* in Sixth Circuit jurisdictions:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt [an RFC] finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations, or rulings affecting the finding or the method for arriving at the finding.

*Id.* at *3. Because there was no new and material evidence or change in the law, regulations, and rulings, the ALJ reasonably adopted the RFC finding from the earlier decision (Tr. 29 ("The undersigned finds the prior decision is accurate, and affords it great consideration and adopts . . .the [RFC] through the date last insured.")).

Plaintiff also argues that the ALJ should have determined that the Medical-Vocational Guidelines (Grids) found at 20 C.F.R. part 404, subpart P, appendix 2 dictated a disability finding. But Plaintiff takes two logical leaps to reach this conclusion, neither of which is appropriate. First, she contends that the ALJ was actually describing a sedentary —not light— exertional capacity because Plaintiff was limited to four hours of standing and walking per workday. This position is simply incorrect. The Commissioner's regulations define the

9

light exertional level by how much weight is lifted, and do not specify a minimum period of time the claimant must spend on her feet: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). To perform the full range of light work, a claimant must be able to walk for six hours in an eight hour workday, Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *5-6, but the ALJ found that Plaintiff could perform a reduced range of light work, not the full range contemplated by the Grids [ TR 27] ("[T]he undersigned finds that . . . the claimant had the [RFC] to perform lightwork . . . except she could only be on her feet half of the workday . . . .").

A finding that Plaintiff could perform a reduced range of light work does not automatically move the RFC finding into the sedentary category, as Plaintiff seems to argue. This merely means that the ALJ could not rely solely on the light grid rule to find that Plaintiff was not disabled, and needed to consult a vocational expert to determine whether there was work in the national economy that Plaintiff could perform. Social Security Ruling 83-12 addresses exactly this situation and states that, when an RFC is between two exertional levels, the ALJ should consult a vocational expert. *See* SSR 83-12, 1983 WL31253, at *3. That is exactly what the ALJ did here — called a vocational

exert to testify about whether a person with Plaintiff's RFC could perform other work (Tr. 47-50) – and then relied on that testimony to find that Plaintiff was not disabled (Tr. 31-32).

Nor can Plaintiff rely on the age categories to support her argument that the Grids dictate a finding of disabled. Plaintiff was a person closely approaching advanced age throughout the period adjudicated by the ALJ (Tr. 31). She was 53 in May 2012, when the relevant period began and 54 in December of that year, when the period ended (Tr. 233 (indicating her birthdate was June 17, 1958)). A person between the ages of 50 and 54 is in the closely-approaching advanced-age category. *See* 20 C.F.R. § 404.1563(d). Applying the light grid rule, a person in that age category who shared Plaintiff's other vocational factors—a high school education and skilled past work with no transferable skills (Tr. 47, 49, 265)—would be classified not disabled. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, § 202.14. However, once such an individual moved into the advanced age category, the grid rules would dictate the opposite and direct a finding of disabled. *Id.at* § 202.06.

Plaintiff argues that the Court should not mechanically apply the grid rules and should put Plaintiff in the advanced age category because she turned 50 six months after her insured status expired (Pl.'s Br. 3-4). But the Commissioner's regulations state that adjudicators should consider placing a

11

claimant in the higher category only if she is "within a few days to a few months" of reaching the older category.5 20 C.F.R. § 404.1563(b). Plaintiff seems to argue—relying on what purports to be an internal Appeals Council document whose provenance is unknown and, in any event, is not official agency guidance—that there is a fixed rule that any claimant within six to 12 months of the next age category should be placed in that higher category (Pl.'s Br. 3-4). However, the agency has stated it is "unable to provide 'fixed' guidelines since such guidelines themselves would reflect a mechanical approach to the application of the age categories." 65 Fed. Reg. 17994, 17999 (2000). As the Sixth Circuit has held, the ALJ had discretion to place Plaintiff in the higher age category, but was not required to do so. *Ellison v. Comm'r of Soc. Sec.*, 101 F. App'x 994, 996 (6th Cir. 2004) ("This [mechanical application of the grids] argument is unpersuasive because the ALJ was not required to place Ellison in an age category that did not include his actual age, even though he has the discretion to do so in borderline cases." (citing *Crady v. Sec'y of Health & Human Servs.*, 835 F.2d 617, 622 (6th Cir.1987))); *see also Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008) (quoting 20 C.F.R. § 404.1563(b)) ("[N]othing in this [regulatory] language" requiring an ALJ to "'consider'" using a different age category "obligates an ALJ to address a claimant's borderline

age situation in his opinion or explain his thought process in arriving at a particular age-category determination.").

In any event, Plaintiff has not shown that she has the vocational adversities that would justify application of the higher age category. When a claimant is within a "few days to a few months" of the older age category, i.e., borderline age, use of the older age category is not automatic; rather the claimant must show "progressively more additional vocational adversity(ies)—to support use of the higher age." See Agency's Hearings, Appeals, and Litigation Law Manual (HALLEX1) II-5-3-2, 2003 WL 25498826 ("Absent a showing of additional vocational adversity(ies) justifying use of the higher age category, the adjudicator will use the claimant's chronological age—even when the time period is only a few days. The adjudicator need not explain his or her use of the claimant's chronological age."). In this case, Plaintiff has made no attempt to explain what additional vocational adversities she believes she has that justify use of the higher age category. But in any event, additional vocational adversities are not present here. Examples of additional vocational adversities include minimal literacy in English and a "history of work in an unskilled job(s) in one isolated industry or work setting." *Id*. Plaintiff is literate in English and has a long history of skilled and semiskilled work [TR. 47, 263]. Thus, she has not shown the additional

vocational adversity necessary to justify use of the older age category.

Finally, Plaintiff argues that the ALJ should not have relied on the vocational expert's testimony because the light jobs that witness identified could not be performed by a person who had to sit for half of the day [Pl.'s Br. 7-8]. The complete Dictionary of Occupational Titles (DOT) entries for those jobs do not demonstrate a conflict between the vocational expert's testimony and the DOT. *See* DOT No. 222.587-038 (Router), 1991 WL 672123l; DOT No. 209.587-034, 1991 WL 671802. In fact, those entries provide a definition of light work that clarifies that some light work jobs may require sitting "most of the time." *Id*.

Plaintiff claims the narrative description of these jobs "fails to disclose any inference that these jobs could be performed while sitting for half of the day" [Pl.'s Br. 8]. But the opposite is also true; nothing in those descriptions indicates that they could not be performed while sitting half of the day. Under the substantial evidence standard of review, that second reading that should be respected. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a 'zone of choice'

14

within which the Commissioner can act, without the fear of court interference." (citations omitted)). Because there is no conflict with the DOT, the ALJ reasonably relied on the vocational expert's testimony that a person with Plaintiff's RFC could perform the identified jobs obs. *See Russell v. Comm'r of Soc. Sec.*, No. 16-3442, 2016 WL 6803729, at *1–2 (6th Cir. Nov. 17, 2016) ("The ALJ properly relied on the [vocational expert]'s testimony because it was not ambiguous concerning whether Russell retained the capacity to work. . . .").

Finally, Plaintiff argues that the ALJ should not have relied on the jobs identified by the vocational expert because he did not provide regional job numbers [Pl.'s Br. 8]. But the correct inquiry is whether there are jobs existing in significant numbers in the "national economy." 20 C.F.R. § 404.1566. This can be established through either regional or national numbers. *Id*. Thus, "[t]he Commissioner is not required to show that job opportunities exist within the local economy." *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999); see also *Nation v. Apfel*, No. 98-6759, 1999 WL 970302, at *8 (6th Cir. Oct. 15, 1999) ("It is sufficient that the [vocational expert] identified a significant number of jobs which exist in the national economy that Plaintiff could perform."). While vocational experts often provide national and local job numbers, both sets of numbers are not required.

The Court finds the ALJ applied the correct legal standards and substantial evidence supports her factual findings. Her decision is **AFFIRMED**.

Accordingly,

**IT IS ORDERED** that the Acting Commissioner's motion for summary judgment [DE 11] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's motions for summary judgment [DEs 8 and 9] be **DENIED.**

A separate judgment in conformity herewith shall this date be entered.

This the 5th day of December, 2017.

Signed By:
*Joseph M. Hood*
Senior U.S. District Judge